19 MAG 0074

Approved: _Samuel Raymond/ARF_
         SAMUEL L. RAYMOND
         Assistant United States Attorney

Before:    THE HONORABLE GABRIEL W. GORENSTEIN
            Chief United States Magistrate Judge
            Southern District of New York

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA     :  **COMPLAINT**

   - v. -                      :  Violation of 21 U.S.C.
                               :  § 846

PROSPERO GONZALEZ and
JESUS MANUEL ROJAS,

                               :  COUNTIES OF OFFENSE:
            Defendants.         :  NEW YORK, BRONX

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MICHAEL CASSINO, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**

**(Narcotics Conspiracy)**

    1.  On or about January 2, 2019, PROSPERO GONZALEZ and JESUS MANUEL ROJAS, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and object of the conspiracy that PROSPERO GONZALEZ and JESUS MANUEL ROJAS, the defendants, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3.  The controlled substance that PROSPERO GONZALEZ and JESUS MANUEL ROJAS, the defendants, conspired to distribute and possess with intent to distribute were 400 grams and more of

a mixture or substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with the DEA and have been in that position since 2016. This affidavit is based upon my own observations, my conversations with other law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my involvement in this investigation, as well as my conversations with other law enforcement agents and individuals, I have learned that in or about December 2018, law enforcement learned of an individual in the vicinity of the Bronx and Westchester County who was offering to sell quantities of fentanyl. Law enforcement surveilled this individual and subsequently identified him as PROSPERO GONZALEZ, the defendant.

6. Thereafter, on or about December 28, 2018, other law enforcement officers and I introduced PROSPERO GONZALEZ, the defendant, to a confidential informant (the "CI").[1] Before the meeting, law enforcement searched the CI and the CI's vehicle for money and contraband, and outfitted the CI with a monitoring device. The meeting, which occurred at a location in the Bronx, was surveilled by law enforcement. Based on law enforcement observations during surveillance, as well as a debriefing with the CI, I have learned that at the meeting, GONZALEZ gave the CI his telephone number, which ended in 2228 (the "2228 Number"). At that same meeting, GONZALEZ gave the CI samples of supposed fentanyl and heroin. GONZALEZ told the CI, in substance and in

---

[1] The CI has been assisting the DEA since 2000. The CI has no arrest record. The CI has indicated that he is willing to testify and is cooperating for financial compensation. The CI has provided information that has been corroborated, and has proven reliable.

2

part, that if the CI was interested he could provide the CI with larger quantities of fentanyl and heroin from his source who lived in Manhattan.

7. After the CI's December 28, 2018 meeting with PROSPERO GONZALEZ, the defendant, the CI provided the samples of supposed fentanyl and heroin from GONZALEZ to law enforcement. The substances were subsequently tested using a "truNarc" machine, which allows testing of opioids without handling. Based on my review of the testing results, I have learned that the substance GONZALEZ identified to the CI as heroin tested positive for heroin.

8. On or about January 2, 2019, in the presence and at the direction of law enforcement, the CI called PROSPERO GONZALEZ, the defendant, at the 2228 Number. The call was recorded. The call was in Spanish, and the CI, who is fluent in Spanish, translated for law enforcement. According to the CI, during the conversation, the CI arranged to purchase one kilogram of fentanyl from GONZALEZ for $55,000, a price that, based on my training and experience, is consistent with the price of a kilogram of fentanyl. The two agreed to meet later that day at a location on the Upper East Side of Manhattan outside of an apartment building (the "Building"). GONZALEZ told the CI, in substance and in part, that his fentanyl source lived in the Building.

9. Prior to the CI's January 2, 2019 meeting with PROSPERO GONZALEZ, the defendant, law enforcement searched the CI and the CI's vehicle for money and contraband, and outfitted the CI with a monitoring device. I and other law enforcement officers then followed the CI's car to the prearranged meeting location in Manhattan. Based on my observations during surveillance, my review of the monitoring device, as well as my conversations with the CI, I have learned, among other things, the following:

a. When the CI pulled up outside the Building, the CI placed a call to the 2228 Number. During the call, which was recorded, the CI told GONZALEZ, in substance and in part, that he was outside the Building.

b. Shortly thereafter, I observed a man whose appearance matched that of GONZALEZ exit the Building and get into the rear of the CI's car. According to the CI, after GONZALEZ entered his car, GONZALEZ told the CI, in sum and substance, that GONZALEZ needed to call "the guy who had it,"

which the CI understood to mean the guy who had the fentanyl. GONZALEZ then made a phone call.

    c. I then observed another man, later identified as JESUS MANUEL ROJAS, the defendant, exit the Building and enter the CI's vehicle. ROJAS exited the vehicle very soon thereafter, reentered the Building, and then came back out of the Building carrying a bag. ROJAS then got back into the front passenger seat of the CI's vehicle with the bag.

    d. A few minutes later, the CI signaled to me and the other law enforcement officers, and we approached the car to arrest GONZALEZ and ROJAS.

    e. As we approached the CI's car, I observed the bag that ROJAS had been carrying as he left the Building, on the floor of the CI's car, in front of ROJAS. I opened the bag and found what appeared to me, based on my training and experience, and the CI's conversations with GONZALEZ, as well as the negotiated price, to be consistent with approximately a kilogram of fentanyl.

   10. Subsequent to his arrest, JESUS MANUEL ROJAS, the defendant, provided consent to law enforcement to search his apartment, which was located in the Building (the "ROJAS Apartment"). During our search of the ROJAS Apartment, we found, among other things, six large quantities of substances, which based on my training, experience, and participation in this investigation, I believe to be consistent with kilogram quantities of fentanyl, or possibly heroin.[2] We also found a large roll of plastic wrap, which I know to be consistent with narcotics paraphernalia.

   11. Subsequent to his arrest, JESUS MANUEL ROJAS, the defendant, waived his *Miranda* rights and agreed to speak with law enforcement. ROJAS also told law enforcement, in substance and in part, the following: he had been working with PROSPERO GONZALEZ, the defendant, at the direction of others, to distribute fentanyl; and he had recently provided large quantities of fentanyl to various customers.

---

[2] As a matter of policy, the Yonkers Police Department does not field-test what appears to be heroin or other opiates like fentanyl.

4

WHEREFORE, deponent respectfully requests PROSPERO GONZALEZ and JESUS MANUEL ROJAS, the defendants, be imprisoned or bailed, as the case may be.

MICHAEL CASSINO
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
3rd day of JANUARY, 2019

THE HONORABLE GABRIEL W. GORENSTEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

5